AGAWAM NATIONAL BANK *vs.* INHABITANTS OF SOUTH HADLEY.

Hampden.   Sept. 23, 1879. — April 3, 1880.   ENDICOTT & LORD, JJ., absent.

Since the St. of 1875, *c.* 209, an action cannot be maintained against a town on a promissory note given by its treasurer for borrowed money, unless the vote of the town authorizing the treasurer to borrow money shows either that the debt was in anticipation of the taxes of the year in which the debt was incurred, and of the year next ensuing, and expressly made payable therefrom, or that the vote was passed by two thirds of the legal voters present and voting at a legal meeting.

If a town treasurer borrows money in a manner unauthorized by the St. of 1875, *c.* 209, the lender cannot maintain an action against the town to recover it back, although the money is used by the treasurer in payment of debts of the town.

CONTRACT upon two promissory notes, each signed " The Inhabitants of South Hadley, by Ira B. Wright, town treasurer." By the first, dated March 1, 1878, the defendant promised to pay, three months after date, to the order of the plaintiff's cashier, the sum of $2000, " the same being part of the sum that the treasurer was authorized to borrow by vote of March 19, 1877." The second was dated May 4, 1878, and differed from the first only in the amount, and in the date of the vote referred to, which in this note was March 18, 1878. The declaration also contained a count for money had and received,

being the amount of the above notes. Trial in the Superior Court, without a jury, before *Dewey*, J., who allowed a bill of exceptions in substance as follows:

It was admitted that Ira B. Wright was the treasurer of the defendant town when the notes in suit were executed, and that the signatures thereon were genuine. The following certified copies of votes of the town, which were filed with the plaintiff, were put into the case and admitted to be correct transcripts from the town records, and the only votes of the town purporting to authorize the treasurer to execute the notes or borrow the money sued for in its behalf: "March 19, 1877. Voted, that the treasurer be authorized to borrow on the credit of the town such sums as may be needed, not exceeding ten thousand dollars at any one time, in anticipation of taxes." "March 18, 1878. Voted, that the treasurer be authorized to borrow such sums as may be needed, in anticipation of taxes, not exceeding ten thousand dollars at any one time."

F. S. Bailey, cashier of the plaintiff bank, testified that Wright kept an account as town treasurer at the bank, and kept no individual account; that he discounted the first note, and paid the proceeds to Wright at the date of the note; and that he also discounted the second note at its date, and placed the proceeds to the credit of Wright as town treasurer.

The plaintiff then offered to show that the identical money paid to Wright from the discount of the first note was all used by him in the payment of debts legally due from the town; and that the proceeds of the second note were all paid out by checks drawn by Wright as treasurer, to pay debts due from the town.

Upon this evidence and offer of proof, the defendant contended that no authority had been shown which, under the St. of 1875, c. 209, would authorize the town treasurer to borrow money; and that, for this reason, the plaintiff could not maintain this action on the notes, or on the count for money had and received. The judge so ruled, and found for the defendant. The plaintiff alleged exceptions.

*N. A. Leonard*, for the plaintiff.

*C. Delano & M. P. Knowlton*, for the defendant.

COLT, J. By the St. of 1875, c. 209, entitled an act to regulate and limit municipal indebtedness. it is provided in § 2 that

" no debts shall hereafter be incurred by any city or town, except debts for temporary loans in anticipation of the taxes of the year in which such debts are incurred, and of the year next ensuing, and made payable therefrom by vote of the said city or town; and except as hereinafter provided." Section 3 provides that " debts, other than those authorized by the second section of this act, shall hereafter be incurred by a town, only by a vote of two thirds of the legal voters present and voting at a legal meeting," and by a city only by a two-thirds vote of both branches of the city council. It is provided, however, by § 10, that these restrictions shall not exempt any city or town from its liability to pay debts contracted for purposes for which it may lawfully expend money.

The statute thus deprives cities and towns of the authority to contract debts for borrowed money, which they had previously possessed, whether derived from express grant, or held to exist as an implied power; and, instead of it, gives to these municipalities a limited power which can be lawfully exercised only in the mode specially pointed out. It contains a positive prohibition of all debts contracted for borrowed money in any other mode. The plain object of the law is to protect cities and towns from the creation of municipal debts without sufficient necessity and consideration, and without proper provision for payment, and to prevent improvident and reckless expenditures of public money, as a natural consequence of debts so contracted. All its provisions, reasonably interpreted, with reference to these salutary ends, must be regarded as prohibitory. They establish a plain limit to the exercise of the power to borrow money.

The towns of this Commonwealth are declared by statute to be bodies corporate, but they are public political corporations, with comparatively limited powers and duties. They are charged with the support of schools, the relief of the poor, the laying out and repair of highways, and are empowered to preserve the peace and good order, maintain internal police, and generally to direct and manage their prudential affairs in a manner not repugnant to the laws of the state. They may dispose of their corporate property, and make contracts necessary and convenient for the exercise of their corporate powers. *Stetson* v. *Kempton*, 13 Mass. 272. *Parsons* v. *Goshen*, 11 Pick. 396. *Allen* v. *Taunton*, 19 Pick. 485.

The power to appropriate money and levy taxes is derived wholly from the statutes, and is limited to the corporate necessities of the town, and all these special powers which are held for political purposes are at all times subject to legislative control. Gen. Sts. c. 18.   When an authority to create a debt for money borrowed is given to such a corporation, and confined to a mode plainly prescribed, that mode is a limitation of the power, of which all persons are bound to take notice.

The votes offered in evidence in this case did not authorize the treasurer to borrow money on the credit of the town.   The proposed loans were not made payable by vote of the town from the taxes of that or the succeeding year, nor were the votes passed by two thirds of the legal voters present at the meeting. The notes given by the treasurer in the name of the town were therefore given without lawful authority.   *Lowell Savings Bank* v. *Winchester*, 8 Allen, 109.   *Benoit* v. *Conway*, 10 Allen, 528. *Dickinson* v. *Conway*, 12 Allen, 487.   Without the authority of a legal vote, the town is not liable in any form for money borrowed.

The present case does not require a consideration of how far innocent holders of negotiable securities, issued by a municipal corporation in violation of conditions imposed by law, may recover upon such securities against the corporation ; or what evidence of compliance with such conditions will be sufficient against the corporation by way of estoppel or otherwise.   Those questions have been many times discussed in the Supreme Court of the United States in cases involving the validity of bonds issued in aid of railroad enterprises.   Whatever difference of judicial opinion may exist in that or in other courts, it is settled that a municipal corporation may successfully defend against such bonds in the hands of any person whatever when its officers and agents have issued them without any power so to do ; *Aspinwall* v. *Daviess County*, 22 How. 364 ; *Marsh* v. *Fulton County*, 10 Wall. 676 ; and may successfully defend against all except *bona fide* holders without notice, when provisions limiting the exercise of a granted power have been disregarded.   In the recent case of *Warren County* v. *Marcy*, 97 U. S. 96, it was declared to be the doctrine of that court, that, when there was lawful power to issue bonds or other negotiable securities,

dependent only on the adoption of certain preliminary proceedings, such as a popular election of the constituent body, the holder in good faith had a right to presume that such preliminary proceedings had taken place, if the fact was certified on the face of the instrument by the authority whose primary duty it was to ascertain it.

In the case at bar, the plaintiff is not a holder without notice. It took the notes in suit with certified copies of the illegal votes of the town in its possession, and with full notice of the treasurer's want of authority.

But the plaintiff contends that it is entitled to recover upon the last count in the declaration for money had and received; and, at the trial, offered to show that the money paid or credited to the town treasurer upon the notes in suit was used by him in the payment of debts due from the town. This evidence was properly rejected. It fails to show that the money was received by the town in its corporate capacity, or that the act of the treasurer in applying it to the payment of its debts was ever authorized or ratified by the town. The difficulty is, that the money was paid to one who had no authority as treasurer or as agent of the town to receive it in the name of the town and apply it to the payment of town debts. If a town could be held in an action for money had and received, under such circumstances, then the purpose of the second and third sections of the statute would be wholly defeated. It makes no difference that the treasurer used this specific money in payment of the town debts. There is nothing to show any appropriation of such payments by the town to its own use, or any ratification of the act. The money in the hands of the treasurer did not belong to the town. For all that appears, funds may have been previously supplied by the corporation from other sources for the payment of these very debts. The relations of the treasurer to the town are not disclosed; he may then have been, and may now be, a defaulter to more than the amount of the alleged payments. The treasurer is an independent accounting officer. *Hancock* v. *Hazzard*, 12 Cush. 112. If he applies money unlawfully obtained to the payment of town debts, that fact alone creates no liability on the part of the town to refund the money to the party from whom it was obtained.

It was decided in *Kelley* v. *Lindsey*, 7 Gray, 287, that money advanced on account of the defendant to one in his employ, but who had no authority to borrow money for him, created no debt against the defendant, although advanced for the purpose of being expended in his business and to pay his debts, and actually so applied. It was said by Dewey, J., that "no one can thus make himself a creditor of another by the unsolicited payment of his debts; and it is not enough to create a liability, that the defendant had the benefit of the money." And in *Railroad National Bank* v. *Lowell*, 109 Mass. 214, which was an action for money had and received, it was decided that the action would not lie, although the money in question, obtained by the city treasurer without authority from the city, was put into a drawer with money of the city and paid out for the city debts, the treasurer being a defaulter to the city for an amount larger than that drawn from the bank. This decision upon the point now under consideration is conclusive.

It is said that an action for money had and received may be maintained against a municipal corporation, when the money has been received under such circumstances that, independently of express contract, the obligation of repayment is imposed as a matter of right and justice. Thus, when it is received under a contract made without authority or in violation of law, the duty arises to refund the money to the party from whom it was received, if, without affirming the illegal contract, the latter seeks only to recover his own money and prevent the defendant from unjustly retaining the benefit of its own illegal act. *Morville* v. *American Tract Society*, 123 Mass. 129. *Dill* v. *Wareham*, 7 Met. 438. *White* v. *Franklin Bank*, 22 Pick. 181. See also *Thomas* v. *Richmond*, 12 Wall. 349, 355. But in such cases it must appear that the money was actually and beneficially appropriated by the town or city in its corporate capacity. It cannot be treated as appropriated, merely because it has been applied by the unauthorized act of the town treasurer, or of any other person, to the payment of municipal debts, for the payment of which other provision had been made. It is sometimes said, indeed, with reference to money borrowed in disregard of positive prohibition, when both parties are in fault, that it cannot under any circumstances be recovered back, because that would be to defeat the

prohibition in favor of a guilty party. *McDonald* v. *Mayor, &c. of New York,* 68 N. Y. 23. *Parr* v. *Greenbush,* 72 N. Y. 463, 472. *Herzo* v. *San Francisco,* 33 Cal. 134. *Argenti* v. *San Francisco,* 16 Cal. 255, 282. See also Dillon Mun. Corp. § 383.

*Exceptions overruled.*